IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2013 SEP 26  A 10: 20

CLERK'S OFFICE
AT GREENBELT

ns̸    DEPUTY

Carlvern M. Dunn
Paula N. Graham-Dunn
11941 Saint Francis Way
Bowie, MD 20721
      Counter-Plaintiffs
v.

James E. Clarke
Atlantic Law Group LLC
1602 Village Market Boulevard SE
Suite 310
Leesburg, VA 20175

Renee Dyson
Atlantic Law Group LLC
1602 Village Market Boulevard SE
Suite 310
Leesburg, VA 20175

Shannon Menapace
Atlantic Law Group LLC
1602 Village Market Boulevard SE
Suite 310
Leesburg, VA 20175

Nationstar Mortgage
350 Highland Dr.
Lewisville, TX 75067

MERS, Inc.
PO Box 2026
Flint, MI 48501

First Home Mortgage Corporation
B003 Corporate Drive
Suite A
Baltimore, MD 21236
      Counter Defendants

Civil No: DKC 13-CV-2330

COUNTERCLAIM

Jury Trial Demanded

## COUNTERCLAIM

COMES NOW the Counter Plaintiffs Carlvern M. Dunn and Paula N. Graham-Dunn, and hereby deny all statements set forth in the Affidavit of Default, Affidavit of Note Ownership, the purported Corporate Assignment of Deed of Trust, the Affidavit of Debt and Right to Foreclose, and the purported Deed of Appointment of Substitute Trustees, respectively filed or caused to be filed by James Clarke, Renee Dyson, Shannon Menapace, and Nationstar Mortgage, LLC.

Counter Plaintiffs dispute the title and ownership of the real property in question, which is the subject of this action, in that the originating alleged lender, and others alleged to have ownership, have unlawfully sold, assigned and/or transferred their ownership and security interest in a Promissory Note and/or Deed of Trust related to the Property, and, thus, did not, and do not, have lawful ownership or a security interest in Counter Plaintiffs property. In support of their counter claims Counter Plaintiffs plead as follows:

### I.   STATEMENT OF THE CASE

1. On May 2, 2005, Counter Plaintiff(s) executed a promissory note ("Note") in favor of First Home Mortgage Corporation, alleged Lender, in the amount of $468,000.00, and allegedly secured by a deed of trust ("DOT") on real property located at 11941 Saint Francis Way, Bowie, MD 20721. Subsequently, Counter Defendants attempted but failed to assign or transfer Counter Plaintiff(s) Note and DOT so that any Counter Defendant could have the right to enforce it. As such, Counter Defendants have no authority to collect on the Note and enforce the Deed of Trust. Despite Counter Defendants' failure to perfect a security interest, Nationstar Mortgage and Substitute Trustees James E. Clarke, Renee Dyson, and Shannon Menapace have attempted to collect on the Note and enforce the DOT with the knowledge that they have no legal right to do so. In addition to

violating the Fair Debt Collection Practices Act and the Real Estate Settlement Procedures Act, all Counter Defendants knowingly concealed their lack of an enforceable security interest by filing or causing to be filed false documents in the related foreclosure case, captioned CDM v. Dunn, in the Circuit Court for Prince George's County.

2. Through this action, Counter Plaintiffs seek damages resulting from Counter Defendants unlawful conduct and a declaratory judgment establishing that all Counter Defendants have failed to substantiate a perfected security interest in the Note and Deed of Trust and have no standing to enforce either. Simply put, Counter Defendants have no legal, equitable, or pecuniary interest in the Note and Deed of Trust.

## II.     JURISDICTION, VENUE, AND PARTIES

3. This Court has original jurisdiction over the claims in this action based on 28 U.S.C. §§ 1331, 1343, 2201, 15 U.S.C. § 1692, 12 U.S.C. § 2605, and 42 U.S.C. § 1983 which confer original jurisdiction on federal district courts in suits to address the deprivation of rights secured by federal law.

4. This Court also has supplemental jurisdiction over the pendant state law claims because they form a part of the same case or controversy under Article III of the United States Constitution, pursuant to 28 U.S.C. § 1367.

5. This Court has original jurisdiction over the claims in this action based on 28 U.S.C. § 1332 which confers original jurisdiction on federal district courts in suits between diverse citizens that involves an amount in controversy in excess of $75,000.00 (seventy five thousand dollars).

6. The unlawful conduct, illegal practices, and acts complained of and alleged in this Complaint were all committed in the District of Maryland and involved real property that

is located in the District of Maryland. Therefore, venue properly lies in this District, pursuant 28 U.S.C. § 1391 (b).

7. Counter Plaintiffs are now, and at all times mentioned herein, individuals residing in the County of Prince George's in the State of Maryland. At all times relevant to this action, Counter Plaintiffs have owned real property commonly known as 11941 Saint Francis Way, Bowie, MD 20721 (the "Property"), further described as: Lot numbered Twenty one (21) in Block lettered E, in the subdivision known as Plat Two, Section 4 "WOODMORE" as per plat thereof recorded in Plat Book N.L.P. 146 at Plat No. 67.

8. At all relevant times, Counter Defendant Nationstar Mortgage LLC is a Texas based company that acquired the mortgage servicing rights of Aurora Loan Services. According to the Maryland Department of Assessments and Taxation, Nationstar has a principal office in Wilmington, Delaware.

9. At all relevant times Counter Defendant First Home Mortgage Corporation is a corporation organized and existing under the laws of the state of Maryland.

10. At all relevant times MERS is a corporation that acted solely as a nominee for the alleged Lender, and the alleged Lender's successors or assigns. MERS is the beneficiary under the Deed of Trust. MERS is organized and existing under the laws of Delaware.

11. Counter Defendants James E. Clarke, Renee Dyson, and Shannon Menapace are the purported Substitute Trustees of the subject DOT. They are also the "Plaintiff" of the removed foreclosure action.

12. Whenever reference is made in this Counter Complaint to any act of any Counter Defendant(s), the allegation shall mean that each Counter Defendant acted individually and/or jointly with the other Counter Defendant(s).

13. Any allegation about acts of any corporate or other business of Counter Defendants means that the corporation or other business did the alleged through its officers, directors, employees, agents, and/or representatives while they were acting within the actual or ostensible scope of their authority.

14. At all relevant times, each Counter Defendant committed the acts, caused or directed others to commit the acts, or permitted others to commit the acts alleged in this Counter Complaint.

15. At all relevant times, each Counter Defendant knew or realized that the other Counter Defendants were engaging in or planned to engage in the violations of law alleged in this Counter Complaint. Knowing or realizing that the other Counter Defendants were engaging in or planning to engage in unlawful conduct, each Counter Defendant nevertheless facilitated the commission of those unlawful acts. Each Counter Defendant intended to encourage, facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted the other Counter Defendants in the unlawful conduct.

### III. FACTUAL ALLEGATIONS

#### Summary of Transaction

16. On May 2, 2005 Carlvern M. Dunn ("Mr. Dunn") executed a Note in favor of First Home Mortgage Corporation ("FHMC"). On the same date Mr. Dunn and Paula N. Graham-Dunn ("Mrs. Dunn") executed a Deed of Trust (hereinafter "DOT") in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), "solely as nominee" for FHMC.

17. Shortly after, FHMC sold the Note to Lehman Brothers Bank, FSB ("LBB"). In a failed attempt to securitize the Note and DOT, LBB then sold the Note to Lehman Brothers Holdings, Inc. ("LBH"). *See* Exhibit 1 "Adjustable Rate Note".

18. Analysis of Prince George's county land records shows that the DOT was never assigned to LBH.

19. Conscious it lacked any beneficial interest in Mr. Dunn's Note, Counter Defendant Nationstar's (formerly Aurora Loan Services at all times relevant hereto) deceptive acts began when Mr. Dunn sought to modify the contract to make the monthly payment more affordable.

20. Mr. Dunn, under the belief that Aurora (now Nationstar) had the authority to negotiate this contract, made three attempts at a modification.

21. The first attempt was denied and in the denial letter dated May 4, 2009 (*see* Exhibit "2") Aurora stated that "your financial info indicates your inability to afford your mortgage". However Mr. Dunn had not missed any mortgage payments at that time, so it was clear that he could afford the payments. In fact all he was attempting to do was to lock in a fixed interest rate, and he hoped for a principal reduction. So it was, and still is, unclear how the conclusion was made that Mr. Dunn could not afford the payments.

22. During the entire modification process, Mr. Dunn relied on the representations made by Aurora that it had the power to collect payments and modify the contract. Since then, Plaintiff has learned that Aurora did not have any legal or corporate authority to collect payments, negotiate the contract, or make derogatory credit reports against his credit file because the Note and DOT had not been assigned to Aurora until June 22, 2012.

23. Counter Defendants attempted to cover-up their failure to properly assign, transfer, or grant Plaintiffs' DOT by recording a purported Corporate Assignment of Deed of Trust on June 22, 2012 in order to foreclose on his property.

24. On or around January 12, 2012, Stacy Sandoz, a purported "Vice President" for MERS, executed the purported Corporate Assignment of Deed of Trust (hereafter "Assignment"). The Assignment alleges that Mortgage Electronic Registration System, Inc. ("MERS") assigned and transferred to Aurora "all its right title and interest in and to said Deed of Trust". Counter Plaintiffs allege that no such transfer ever occurred and that Stacy Sandoz had no corporate authority to assign Counter Plaintiffs' Note and/or DOT to Aurora.

25. In an effort to verify and validate the alleged debt, Mr. Dunn sent Nationstar Mortgage a Qualified Written Request ("QWR") letter pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C § 2605(e), in which he requested that the purported servicer provide, among other things, a true and correct copy of the original Note and a complete life of the loan transaction history. *See* Exhibit "3", attached hereto is a true and correct copy of the Qualified Written Request.

26. Nationstar's response to Mr. Dunn's QWR at issue supports his allegations that his Note was not properly transferred such that any Counter Defendants can enforce the alleged obligation and/or collect mortgage payments.

27. In a welcome letter dated July 15, 2012, Nationstar identified Associated Bank as the owner of the "loan". In letters dated August 9, 2012 and October 2012 Nationstar responded to Mr. Dunn's QWR: "Our records indicate that Associated Bank, N.A., is the current owner of the loan" and "Please note that Nationstar is the *servicer*". See Exhibit "4"

28. This prompted Mr. Dunn to call Associated Bank on May 30, 2013 to follow up on the QWR he sent. In response Diedre Lacasse of Associated Bank sent a letter that stated

"After a thorough review of our account records we are unable to locate any consumer mortgage loans for residential property in your name. The account numbers you provided are not valid and we have no records that indicate you are or were a customer of Associated Bank". *See* Exhibit "5" letter from Associated Bank.

29. Contradictorily, an Affidavit of Note Ownership, filed by the Counter Defendant Substitute Trustees, certified "that Associated Bank, N.A. is the owner of the debt instrument and has authorized Nationstar Mortgage LLC to be the holder of the Note". *See* Exhibit "6".

30. There appears to be a material inconsistency and Counter Plaintiffs seek the court's assistance in determining who the true creditor is of the subject Note and DOT.

31. Mr. Dunn made payments based on the allegedly improper, inaccurate, and fraudulent representations of the subject account.

32. Counter Plaintiff's credit and credit score were severely damaged.

33. The title to Mr. Dunn's and Mrs. Dunn's home has been slandered, clouded, and its salability has been rendered unmarketable.

34. Counter Plaintiffs do not know who the current beneficiary of the Note and DOT actually is, such that they are now subject to double financial jeopardy.

<u>The Deed of Trust</u>

35. The Deed of Trust (DOT) dated May 2, 2005 names the Trustee as David E. Waters and Anthony B. Olmert, Sr. The institution of the foreclosure action under a *power of sale* must be brought by any individual authorized to exercise power of sale in the DOT or a successor Trustee.

36. The power of sale itself as defined in the DOT authorizes the Trustee to issue notice sale, sell off property, postpone the property sale, deliver to the purchaser the deed conveying the property, and apply the proceeds of the sale. **Nowhere does language state that the power to resolve controversies over debts owed derives from the power of sale.**

37. In this case, that includes the authorization of a successor trustee to litigate against Counter Plaintiffs in order to assert the right to foreclose. Notably, language also does not exist in the DOT indicating that the Substitute Trustees may be multiple in number and that each may "exercise all of the powers" as any plaintiff successor trustees may claim.

38. That power, self-granted or not, underscores the peculiar pattern in foreclosure actions of the continuous replacement of qualified trustees by successor substitute trustees who also act as practicing attorneys.

39. Finally should Plaintiffs of any foreclosure action be unable to validate the trustee named in the DOT and should wish to seek removal of that trustee, procedures must be followed as set forth in the lien instrument.

40. The secured parties holding not less than 25% of the beneficial interest under the DOT may file a motion for the removal of the trust and appointment of a new trustee. Such a motion shall be supported by an affidavit and shall state the facts alleged to constitute grounds for removal.

41. In the related foreclosure action, the Counter Defendant Substitute Trustees were required to file a Motion for the Removal and Appointment of a New Trustee. If not, the Deed of Appointment of Substitute Trustees was invalid and improperly filed in that case.

<u>Mortgage Electronic Registration System, Inc. ("MERS")</u>

42. The creation of MERS changed the lending process. Instead of the alleged lender being the Beneficiary on the Mortgage/Deed of Trust, MERS was now named as either the "Beneficiary" or the "Nominee for the Beneficiary" on the DOT. The concept was that with MERS assuming this role, there would be no need for Assignments of the DOT, since MERS would be given the "power of sale" through the DOT.

43. The naming of MERS as the Beneficiary meant that certain other procedures had to change. This was a result of the Note actually being made out to the alleged lender, and not to MERS.

44. Direct from the MERS website, they admit that they name people to sign documents in the name of MERS. Often, these are Title Company employees or others that have no knowledge of the actual loan.

45. Even worse, MERS admits that it is not the true beneficiary of the loan. In fact, it is likely that MERS has no knowledge of the true beneficiary of the loan for whom they are representing in an "Agency" relationship. They admit to this when they say "*Your title company or MERS officer can easily determine the true beneficiary.*"

46. Further problematic is that MERS' public record Recommended Foreclosure Procedure Manual, page 7, suggests the naming of MERS in the DOT was to intentionally mislead the borrower and benefit the lenders. "When MERS is the mortgagee of record, the foreclosure can be commenced in the name of MERS in place of the loan servicer." It is likely because of such activity by MERS that the U.S. Government announced publicly that as of May 1, 2010, Fannie Mae no longer reimburses a loan servicer for any expense incurred in preparing or recording an assignment of mortgage loan from MERS to the loan servicer or to Fannie Mae.

## Note and Deed of Trust Separation

47. The DOT was entered in favor of MERS. However the Note was entered in favor of FHMC. Generally, if the DOT and Note are not together with the same entity, there can be no enforcement of the Note.

48. As established in the previous section, the DOT enforces the Note, and provides the capability for the lender to foreclose on a property. Therefore, if the DOT and the Note are separated foreclosure cannot occur:

49. The Note cannot be enforced by the DOT if each contains a different mortgagee, and if the DOT is not itself a legally enforceable instrument, there can be no valid foreclosure on Borrower's property.

50. Legal precedence of recent public law cases exists for these conclusions. Respectively: *Saxon vs Hillery, Dec 2008, Contra Costa County Superior Court*, Dec. 2008 and in re Hudson, 643 S.E. 2d 485 (N.C. Ct. App. 2007).

### IV.    FIRST CAUSE OF ACTION –DECLARATORY RELIEF: TO DETERMINE STATUS OF PLAINTIFFS' CLAIMS [28 U.S.C§§ 2201, 2202] [Against All Counter Defendants]

51. Counter Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

52. Section 2202 of Title 28 of the United States Code states: Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

53. Counter Plaintiffs allege that none of the Counter Defendants have a secured or unsecured legal, equitable, or pecuniary interest in the lien evidenced by the Deed of

Trust and that the purported assignment has no value since the Deed of Trust is wholly unsecured.

54. The Deed of Appointment of Substitute Trustees dated April 11, 2013 and a Corporate Assignment of Deed of Trust dated June 22, 2012 assert that Substitute Trustees and Nationstar (formerly Aurora), respectively, were assigned and transferred a secured enforceable interest in, and a perfected lien against the Counter Plaintiffs' Note, Deed of Trust, and Property.

55. Thus, the competing allegations made by Counter Plaintiff(s) and Counter Defendants, above, established that a real and actual controversy exists as to the respective rights of the parties to this matter, including ownership of the Property.

56. Accordingly, Counter Plaintiffs request that the Court make a finding and issue appropriate orders stating that none of the named Counter Defendants, have any right or interest in Plaintiffs' Note, DOT, or the Property which authorizes them, in fact or as a matter of law, to collect mortgage payments or enforce the terms of the Note or DOT in any manner whatsoever.

57. Plaintiff will suffer prejudice if the Court does not determine the rights and obligations of the parties because Counter Plaintiffs: (1) will be denied the opportunity to identify the true and current creditor/lender and negotiate with them; (2) will be denied the right to conduct discovery and have Nationstar's claims verified by a custodian of records who has personal knowledge of the loan and all transactions related to it; and (3) will be denied the opportunity to discover the true amount, if any, that is still owed minus any and all illegal costs, fees, and charges.

58. Due to the actual case and controversy regarding competing claims and allegations, it is necessary that the Court declare the actual rights and obligations of the parties and make a determination as to whether any of the Counter Plaintiffs claims against Plaintiff are enforceable and whether they are secured or unsecured by any right, title, or interest in Counter Plaintiff(s)' Property.

59. Furthermore, the conduct of all the Counter Defendants, as herein described, was so malicious and contemptible that it would be looked down upon and despised by ordinary people. Counter Plaintiffs are therefore entitled to punitive damages in an amount appropriate to punish Counter Defendants and to deter others from engaging in similar misconduct.

## V.   SECOND CAUSE OF ACTION- QUASI CONTRACT
### [Against Nationstar (formerly Aurora)]

60. Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein in the commission of the tort.

61. Aurora, and then Nationstar, by acquisition of Aurora, demanded and/or continued to collect monthly mortgage payments from Counter Plaintiff. Counter Plaintiff reasonably relied upon the servicer's assertion it was entitled to the payments.

62. Nationstar knowingly accepted payments and retained them for their own use knowing that it did not acquire an interest in Counter Plaintiff's Note, such that they could accept or keep Counter Plaintiff's payments. It would be inequitable for Nationstar to retain the payments it received from Counter Plaintiff, which it did not have legal authority to collect. The equitable remedy of restitution when unjust enrichment has occurred is an obligation created by the law without regard to the intention of the parties, and is

designed to restore the aggrieved party to his or her former position by return of the thing or its equivalent in money.

63. Section 23 of the Deed of Trust states that: "Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the property without warranty to the person or persons legally entitled to it". The obligations to FHMC under the Deed of Trust were fulfilled when FHMC received the balance on the Note as proceeds of the sale of Counter Plaintiff's Note to LBB. Nationstar has been unjustly enriched by collecting monthly payments from Plaintiff when they have no interest in the Note or Deed of Trust.

64. Mr. Dunn seeks restitution for any payments made to Aurora and/or Nationstar that were not paid to FHMC or other beneficiary, if any.

### VI. THIRD CAUSE OF ACTION-VIOLATION OF 15 U.S. C § 1692, et seq.
[Against Nationstar, Clarke, Dyson and Menapace]

65. Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

66. Counter Defendant Nationstar has attempted to collect Plaintiff's alleged debt obligation and thus are debt collectors pursuant to the Federal Debt Collection Practices Act ("FDCPA"). "The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another". 15 U.S.C. § 1692a (6)

67. Federal law prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt....[including] the false representation of...the character, amount, or legal status of any debt....or[t] he threat to take any action that cannot legally be taken..."15 U.S.C. § 1692e (2) (A), (5).

68. Counter Defendants Clarke, Dyson and Menapace attempted to collect on the Note under false pretenses, namely that Nationstar was assigned Counter Plaintiff's alleged debt when in fact they were not, and that Clarke Dyson and Menapace were appointed as lawful Substitute Trustees when in fact they were not.

69. Nationstar, acting as Mr. Dunn's mortgage servicer, has been acting in a manner to mislead Mr. Dunn into believing that Nationstar had the authority to demand payments from him.

70. Nationstar, acting as Mr. Dunn's mortgage servicer, threatened to take action, namely engaging in collection activities that cannot legally be taken by them.

71. As alleged herein, Plaintiff's Note was not properly transferred to Nationstar, who seeks to cause its purported authorized agent(s), the Counter Defendant Substitute Trustees, to engage in an unlawful foreclosure action.

72. Nationstar did not and does not have a perfected security interest in Mr. Dunn's Note such that it can enforce or cause to be enforced Mr. Dunn's alleged obligation and/or collect mortgage payments.

73. Counter Plaintiff alleges that Nationstar, Clarke, Dyson and Menapace falsely represented the status of his alleged debt and their ability to enforce Mr. Dunn's alleged debt obligation, in which they have no pecuniary, equitable, or legal interest.

74. The conduct described above by Nationstar and the Substitute Trustees, was malicious because Counter Defendants knew that they were not acting on behalf of the current pecuniary beneficiary of the Note and DOT. However, despite such knowledge, Counter Defendants continued to demand and collect Plaintiff's mortgage payments, and to enforce through foreclosure.

75. On information and belief, at all times material, Nationstar had, and has, actual knowledge that Plaintiff would continue to make payments based on these improper, inaccurate, and fraudulent representations.

76. The foregoing acts and omissions of each and every Counter Defendant and their agents constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq., with respect to Counter Plaintiff.

77. Counter Plaintiff could not have reasonably known of the existence of a claim for violation of 15 U.S.C. § 1692(e) because Counter Defendants fraudulently concealed the fact that they were not entitled to enforce Mr. Dunn's alleged debt obligation and were falsely representing the character and amount of money Plaintiff allegedly still owed.

## VI.   FOURTH CAUSE OF ACTION – ACCOUNTING
### [Against FHMC, Nationstar, Clarke, Dyson,& Menapace]

78. Counter Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

79. Nationstar, through acquisition of Aurora, has held itself out to be Counter Plaintiff's mortgage servicer and Clarke, Dyson and Menapace have held themselves out to be the Substitute Trustees of Counter Plaintiffs' DOT. As a result of these purported

relationships, said Counter Defendants have a fiduciary duty to properly account for payments made by Mr. Dunn.

80. Specifically, Mr. Dunn demands an accounting from the issuance of the alleged loan, since a Note is not the actual loan nor is it evidence that a loan was given. A note, as stated in paragraph one, is simply "Borrower's promise to pay". In the subject Note it states in paragraph 1: "In return for a loan that I have received….", however Mr. Dunn has no record of receipt of a loan; and

81. As a result of the aforementioned fraudulent conduct, Mr. Dunn paid Aurora or Nationstar his mortgage payments. However, for the reasons stated herein, none of this money was actually owed to Aurora or Nationstar. For that reason, these monies are due to be either credited back to Mr. Dunn in full or credited to the rightful owner of Plaintiff's Note and DOT.

82. The amount of money due from Counter Defendants FHMC and/or Nationstar to Counter Plaintiff is unknown to Counter Plaintiff and cannot be ascertained without an accounting of the receipts and disbursements of the aforementioned transactions. Plaintiff is informed and believes and thereon alleges that the amount due to him exceeds $75,000.00 (seventy five thousand dollars).

### PRAYER FOR RELIEF

WHEREFORE, Counter Plaintiffs pray as follows:

1. For compensatory, special, and general damages in an amount according to proof at trial, but not less than $250,000 (two hundred fifty thousand dollars) against each Counter Defendant;

2. For punitive and exemplary damages in an amount to be determined by the Court against all Counter Defendants ;

3. For an order compelling Counter Defendants to remove any instrument, including the Deed of Trust and the Corporate Assignment of Deed of Trust, which does or could be construed as constituting a cloud upon Counter Plaintiff's title to the Property;

4. For a declaratory judgment finding that Counter Defendants do not have any legally cognizable rights as to Counter Plaintiff, the Property, the Note, or the Deed of Trust.

5. For the court to issue an order restraining Counter Defendants, their agents, or employees from continuing or initiating any action against the Property and enjoining Counter Defendants, their agents, or employees from doing so during the pendency of this matter;

6. For an order compelling Counter Defendants to disgorge all amounts wrongfully taken from Counter Plaintiff and returning the same to the Counter Plaintiff's interest thereon at the statutory rate from the date the funds were first received from Counter Plaintiff;

7. For costs of suit incurred herein;

8. For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

1. Counter Plaintiffs hereby demand a trial by jury on all claims.

[Verification Follows]

# VERIFICATION

STATE OF MARYLAND
COUNTY OF PRINCE GEORGE'S

    BEFORE ME personally appeared Carlvern M. Dunn, who, being by me first duly sworn and identified in accordance with Maryland state law, deposes and says:
1. My name is Carlvern M. Dunn;
2. I have prepared, read and understood the attached foregoing Counter complaint filed herein, and each fact alleged therein is true and correct of my own personal knowledge.
3. FURTHER THE AFFIANT SAYETH NAUGHT

                                                                Carlvern M. Dunn

BEFORE ME personally appeared Paula N. Graham-Dunn, who, being by me first duly sworn and identified in accordance with Maryland state law, deposes and says:
1. My name is Paula N. Graham-Dunn;
2. I have prepared, read and understood the attached foregoing Counter complaint filed herein, and each fact alleged therein is true and correct of my own personal knowledge.
3. FURTHER THE AFFIANT SAYETH NAUGHT

                                                                Paula N. Graham-Dunn

Subscribed and sworn to (or affirmed) before me _Carmen Johnson_, Notary Public, on this _25_ day of _September_, 2013, by _Paula N. Graham Dunn_ and _Carlven Dunn_, who proved to me on the basis of satisfactory evidence to be the persons who appeared before me.

Signature: _Carmen J_ _____ Seal    My Commission Expires: _9/25/2015_


