IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES E. CLARKE, et al.                   :

                                          :

      v.                                  :    Civil Action No. DKC 13-2330

                                          :

CALVERN M. DUNN, et al.                   :

                                          :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this foreclosure case are three motions to dismiss the counterclaim/third-party complaint filed by: Plaintiffs/ Counter-Defendants James Clarke, Renee Dyson, and Shannon Menapace ("Substitute Trustees") (ECF No. 26); Third-Party Defendants Nationstar and Mortgage Electronic System ("MERS") (ECF No. 30); and Third-Party Defendant First Home Mortgage Corporation ("First Home") (ECF No. 38). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, First Home's motion to dismiss will be granted; the Substitute Trustees' motion to dismiss will be granted in part and denied in part; and Nationstar and MERS's motion to dismiss will be granted in part and denied in part.

## I.    Background

On May 2, 2005, Defendants/Counter-Plaintiffs Carlvern M. Dunn and Paula N. Graham-Dunn ("the Dunns") executed a promissory note in favor of First Home in the amount of $468,000.00 ("the Note") and a deed of trust ("DOT") on real property located at 11941 Saint Francis Way, Bowie, Maryland. The DOT was executed in favor of MERS "solely as nominee for Lender and Lender's successors and assigns," meaning MERS was given authority to transfer the mortgage on behalf of First Home and any subsequent lenders. (ECF No. 2-1, at 3). First Home sold the Note to Lehman Brothers Bank, which then sold the Note to Lehman Brothers Holdings. According to later filings, the Note and DOT were purportedly sold/assigned to Associated Bank, N.A., and subsequent to these transfers, Nationstar (formerly Aurora Loan Services) began servicing the Dunns' loan.

On April 11, 2013, Nationstar executed a Deed of Appointment of Substitute Trustees, naming James E. Clarke, Renee Dyson, and Shannon Menapace as substitute trustees of the DOT. (ECF No. 2-3). On July 22, 2013, Substitute Trustees brought a foreclosure action against the Dunns in the Circuit Court for Prince George's County. Among the filings in the foreclosure docket was an Affidavit of Note Ownership (ECF No. 2-2, at 2), filed by the Substitute Trustees on July 12, 2013, certifying that "Associated Bank, N.A. is the owner of the debt

instrument and has authorized Nationstar Mortgage, LLC to be the holder of the Note[.]" (ECF No. 18 ¶ 29; No. 18-10).

On August 12, 2013, the Dunns, proceeding *pro se*, removed the foreclosure action to this court pursuant to 28 U.S.C. § 1441, asserting diversity of citizenship jurisdiction under 28 U.S.C. § 1332. (ECF No. 1). The Substitute Trustees are citizens of Virginia, and the Dunns are citizens of Maryland.[1]

---

[1] 28 U.S.C. § 1441(b)(2) prohibits a case to be removed solely on the basis of diversity jurisdiction if any of the parties properly joined and served as defendants is a citizen of the state in which such action is brought. The Dunns, as citizens of Maryland, would appear to fall within this rule, making removal improper. But as Judge Hollander recently noted:

> The 'forum-state defendant rule' found in 28 U.S.C. § 1441(b)(2) is widely regarded as procedural, rather than jurisdictional. 'Although the United States Court of Appeals for the Fourth Circuit has yet to rule on this question, ten circuit courts have had occasion to address it' and, of those ten circuits, 'nine have found that removal by a forum defendant is a procedural defect, and thus waivable.' *Councell v. Homer Laughlin China Co.*, 823 F.Supp.2d 370, 378 (N.D.W.Va. 2011) (citing cases).

*Ross v. Mayor & City Council of Balt.*, No. ELH-14-369, 2014 WL 2860580, at *7 (D.Md. June 20, 2014). Pursuant to 28 U.S.C. § 1447(c), "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal." The Dunns removed the case on August 12, 2013, and no motion to remand has been filed. On October 8, 2013, the Substitute Trustees filed a status report stating that removal is inappropriate in a foreclosure docket. (ECF No. 20). The undersigned noted on October 28, 2013 that "[b]ecause 30 days have passed since this case was removed, the only basis on which a case can be remanded to state court is if subject matter

On September 26, 2013, the Dunns filed a counterclaim against "Counter-Defendants"[2] the Substitute Trustees, First Home, Nationstar, and MERS. (ECF No. 18). The counterclaim contains four causes of action. First, the Dunns request a declaratory judgment pursuant to 28 U.S.C. § 2202 as to all Counter-Defendants stating that none of them have any right or interest in the Note, the DOT, or the Bowie property that authorizes them to collect mortgage payments or enforce the terms of the Note or the DOT. Second, the Dunns assert a claim of unjust enrichment against Nationstar. Third, they make a claim alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, against Nationstar and the Substitute Trustees. Fourth, they assert a claim for an accounting against First Home, Nationstar, and the Substitute Trustees.

Although Nationstar purported to be the Dunns' loan servicer as early as 2009, the Dunns contend that MERS never properly assigned, transferred, or granted the DOT to Nationstar. The Dunns' allegation is based on the fact that

---

jurisdiction is lacking. Any such motion should be filed within 14 days." (ECF No. 22). No such motion was filed.

[2] Although MERS, Nationstar, and First Home are technically third-party defendants in this action, for ease of reference, they will be referred to as "Counter-Defendants" along with Substitute Trustees, the only true counter-defendants.

Nationstar informed them that it was servicing the loan on behalf of Associated Bank, the owner of the loan, but Associated Bank later disclaimed ownership.[3] The Dunns further allege that Nationstar knew that the assignment of the loan was improper, and attempted to cover up this fact by having Ms. Stacy Sandoz, a purported Vice President of MERS, execute the alleged Corporate Assignment of Deed of Trust on or around January 12, 2012, in order to foreclose of the Dunns' mortgage.[4]

On November 25, 2013, the Substitute Trustees moved to dismiss. (ECF No. 26). Nationstar and MERS filed a motion to dismiss on December 6, 2013. (ECF No. 30). First Home filed a motion to dismiss on December 23, 2013. (ECF No. 38). In accordance with *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), the clerk of court mailed letters to the Dunns on the

---

[3] Specifically, on June 25, 2012, the Dunns requested that Nationstar provide them a "copy of the original Note and a complete life of the loan transaction history." (ECF No. 18 ¶ 25). Nationstar sent the Dunns a letter on July 15, 2012, which identified Associated Bank as the owner of the loan and Nationstar as the loan servicer. On May 30, 2013, nearly a year later, Mr. Dunn called Associated Bank to verify the information he had received from Nationstar. On May 31, 2013, Associated Bank responded with a letter stating that "[a]fter a thorough review of our account records we are unable to locate any consumer mortgage loans for residential property in your name. The account numbers you provided are not valid and we have no records that indicate you are or were a customer of Associated Bank." (ECF No. 18 ¶ 28; ECF No. 18-9).

[4] The Dunns contend that this assignment is void because Ms. Sandoz had no corporate authority to assign the Note or DOT to Nationstar. (ECF No. 18 ¶ 24).

same day as each filing, notifying them that a dispositive motion had been filed and that they were entitled to file opposition material or risk entry of judgment against them. (ECF Nos. 27, 31, 41, and 42).  The Dunns opposed each motion. (ECF Nos. 32, 36, and 43).  Only First Home filed a reply.  (ECF No. 44).

## II.  Standard of Review

The Substitute Trustees, Nationstar and MERS, and First Home, filed three separate motions to dismiss (ECF Nos. 26, 30, and 38).  The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint.  *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006).  A complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266,

268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4ᵗʰ Cir. 1999) (*citing Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4ᵗʰ Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4ᵗʰ Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4ᵗʰ Cir. 1979).

Finally, while courts generally should hold *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers," they may nevertheless dismiss complaints that lack a cognizable legal theory or that fail to allege sufficient facts under a cognizable legal theory. *Haines v. Kerner,* 404 U.S. 519, 520 (1972); *Turner v. Kight,* 192 F.Supp.2d 391, 398 (D.Md. 2002), *aff'd*, 121 F.App'x. 9 (4ᵗʰ Cir. 2005).

## III. Analysis

### A.    Fair Debt Collection Practices Act

The Dunns allege that Nationstar and the Substitute Trustees violated the FDCPA, (ECF No. 18, at 14-16), which protects consumers from "abusive and deceptive debt collection practices by debt collectors." *Akalwadi v. Risk Mgmt. Alts.,*

7

*Inc.*, 336 F.Supp.2d 492, 500 (D.Md. 2004).   They contend that Nationstar is a debt collector under the FDCPA and has violated the FDCPA by using fraudulent representations and unlawful actions in its attempt to collect on the Dunns' debt obligation.[5] The Dunns allege that the Substitute Trustees attempted to collect on their debt by foreclosing on their Property using false pretenses.[6]

The FDCPA "forbids the use of any false, deceptive, or misleading representation or means in debt collection and provides a non-exhaustive list of prohibited conduct." *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135 (4th Cir. 1996).   The Dunns allege that both Nationstar and the Substitute Trustees violated 15 U.S.C. § 1692e, which states that:

> [a] debt collector may not use any false,
> deceptive, or misleading representation or
> means in connection with the collection of
> any debt. . . .  [T]he following conduct is
> a violation of this section:

---

[5] Specifically, the Dunns allege that Nationstar has:  (1) falsely represented that it has authority to demand payments from the Dunns; (2) attempted fraudulently to conceal the fact that it does not have this authority; and (3) unlawfully authorized the Substitute Trustees to engage in the foreclosure action.  (ECF No. 18 ¶¶ 66-67, 69-77).

[6] The Dunns contend that the Substitute Trustees falsely represented that:  Nationstar had been assigned the debt; they were lawfully appointed as substitute trustees; and they were entitled to enforce the Note via the foreclosure action.  (ECF No. 18 ¶¶ 68, 71, 73).

- The false representation of the character, amount, or legal status of any debt;

- The threat to take any action that cannot legally be taken or that is not intended to be taken.

15 U.S.C. § 1692e(2)(A),(5). To state a claim for relief under § 1692e, the Dunns must allege that: (1) they have been the object of collection activity arising from consumer debt, (2) the Counter-Defendants are "debt collectors" as defined by the FDCPA, and (3) the Counter-Defendants have engaged in an act or omission prohibited by the FDCPA. *Sterling v. Ourisman Chevrolet of Bowie Inc.*, 943 F.Supp.2d 577, 585 (D.Md. 2013).

Nationstar argues that it is not a debt collector as defined by the FDCPA and thus not subject to the Act's requirements. (ECF No. 30 ¶ 29). It further states that it is "an undisputed material fact that [it] is the holder of the note and the servicer of the loan at issue[,]" and thus argues it is statutorily exempt from the FDCPA. (ECF No. 30 ¶ 29-30). In response, the Dunns provide a letter sent from Nationstar to them which states that "Nationstar is a debt collector." (ECF No. 36-4).

The FDCPA defines "debt collector," in part, as:

> any person who uses any instrumentality of
> interstate commerce or the mails in any
> business the *principal purpose* of which is
> the collection of any debts, or who
> regularly collects or attempts to collect,
> directly or indirectly, debts owed or due or
> asserted to be owed or due *another*.

15 U.S.C. § 1692a(6) (emphasis added).  "Debt collectors" are distinguished from "creditors" under the FDPA by the fact that they collect debts that are not owed to them but to another creditor, and by the fact that the primary purpose of their businesses is to collect debts.  A creditor becomes a debt collector, under the FDCPA, if he receives an assignment of a debt *already in default* for the sole purpose of collecting it. *Id.* § 1692a(4).

1.  **Nationstar**

Nationstar contends that it acted as a loan servicer not a debt collector in this transaction.  "Ordinarily, mortgage servicers are not 'debt collectors' under the [FDCPA] because they are not persons who attempt to collect debts owed or due or asserted to be owed or due *another*." *Allen v. Bank of Am., N.A.*, 933 F.Supp.2d 716, 729 (D.Md. 2013) (emphasis in original) (internal quotation marks omitted).  Importantly, the FDCPA excludes from its definition of "debt collector" "any person collecting or attempting to collect any debt owed . . . which was *not in default* at the time it was *obtained* by such person." 15 U.S.C. § 1692a(6)(F)(iii) (emphasis added).  Courts across

the country have consistently held that the actions of a mortgage servicer such as Nationstar "would only be covered under the FDCPA if the debt at issue was acquired after the customer or debtor defaulted on the loan in question." *Diaz v. Residential Credit Solutions, Inc.*, 297 F.R.D. 42, 49 (E.D.N.Y. 2014); *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 360 n.4 (6th Cir. 2012) ("a loan servicer will become a debt collector under 1692a(6)(F)(iii) if the debt was in default or treated as such when it was acquired."); *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (noting that the legislative history of § 1692a(6) indicates that "a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned"); *Casault v. Fed. Nat'l Mortg. Ass'n*, 915 F.Supp.2d 1113, 1126 (C.D.Cal. 2012) (noting that to have a properly pled claim under the FDCPA a plaintiff must not only allege that loan services was a "debt collector" but also show that loan servicer was "assigned defaulted loans for the purpose of collection"). Furthermore, an entity that refers to itself as a "debt collector" does not become one for purposes of the FDCPA if it does not otherwise fall within that law's definition. *Prickett v. BAC Home Loans*, 946 F.Supp.2d 1236, 1249 (N.D.Ala. 2013) (explaining that "the relevant test of whether an entity is a debt collector under the FDCPA is whether

the statutory definition applies, not whether the entity has ever stated in a document that it is a debt collector"); *see also Laccinole v. Twin Oaks Software Dev., Inc.,* No. CA 13-716 ML, 2014 WL 2440400, at *10 (D.R.I. May 30, 2014) (citing cases that have rejected the "self-identification argument," namely that entities which send letters stating that they are "debt collectors" or "attempt[ing] to collect a debt" are not necessarily "debt collectors" within the FDCPA's definition (internal quotation marks omitted)).

Here, the Dunns have pled facts sufficient to show that Nationstar, a mortgage servicer, is a debt collector under the FDCPA. Although Nationstar's letter to the Dunns stating that it is a "debt collector" is immaterial, there is documentation from Nationstar in the foreclosure record, showing that the Dunns' mortgage was in default as of October 2, 2011. (ECF No. 2-6, at 3). The Dunns have also provided a letter from Nationstar stating that "[e]ffective 07/01/12 Nationstar Mortgage is now the servicer for your mortgage account[,]" (ECF No. 36-4), indicating the approximate date that Nationstar was assigned their mortgage. A separate letter from Nationstar, attached as an exhibit supporting the Dunns' counterclaim, states that the Dunns' "debt is owed to ASSOCIATED BANK, N.A., but is being serviced by Nationstar." (ECF No. 18-5). Construing the facts in the light most favorable to the Dunns,

they have adequately supported an accusation that Nationstar may be a "debt collector" under the FDCPA because it acquired the Dunns' account after their debt was in default, and it attempted to collect on the debt obligation for Associated Bank.  The Dunns have also alleged facts sufficient to show that Nationstar may have violated the FDCPA by making false representations regarding their loan, namely that it is servicing the loan on behalf of Associated Bank (ECF No. 18-5), when Associated Bank refutes that the Dunns are or ever were its customer, (ECF No. 18-9), and fraudulently attempting to collect payments and foreclose on the loan under this same premise.

> ### 2.   The Substitute Trustees

The Substitute Trustees argue that the FDCPA claim should also be dismissed as to them.  The Dunns contend that the Substitute Trustees – acting as agents of Nationstar – attempted to collect on the Note under false pretenses, namely that Nationstar was assigned the Dunns' debt when in fact it was not, and that the Substitute Trustees were appointed as lawful substitute trustees, when in fact they were not.  (ECF No. 18 ¶ 68).  The Dunns also allege that the Substitute Trustees *knew* they were not legally authorized agents, (*Id.* ¶ 74), implying that their actions were fraudulent.  The Substitute Trustees argue that Nationstar is the current holder of the mortgage loan and appointed the Substitute Trustees pursuant to the Deed of

Appointment of Substitute Trustees, which was filed in the court docket and land records. (ECF No. 26 ¶ 23). They contend that their actions were authorized by law due to Nationstar's rights as a holder to collect on the debt and appoint them as substitute trustees to enforce the debt.

The Substitute Trustees' arguments will be rejected, as they rely on documents extrinsic to the counter-complaint. The Dunns dispute the authenticity of the appointments and affidavits in the foreclosure action and rely on them only to show that they are legally invalid. (ECF No. 18 ¶¶ 29-41). Furthermore, the Substitute Trustees do not dispute that they are a "debt collector" subject to the FDCPA.[7] The Dunns have pled with sufficient particularity that the Substitute Trustees violated the FDCPA by alleging that they attempted to collect

---

[7] The United States Court of Appeals for the Fourth Circuit has held that lawyers appointed by a lender as substitute trustees, who attempt to foreclose on a deed of trust, can be liable under the FDCPA as "debt collectors." *See Wilson v. Draper & Goldberg, P.L.L.C.,* 443 F.3d 373, 378-79 (4th Cir. 2006) (finding that the substitute trustees' "foreclosure action was an attempt to collect a 'debt,' [and that substitute trustees] are not excluded from the definition of 'debt collector' under 15 U.S.C.A. § 1692a(6)(F)(i) merely because they were acting as trustees foreclosing on a property pursuant to a deed of trust"); *see also Glazer v. Chase Home Finance LLC,* 704 F.3d 453, 464 (6th Cir. 2013) ("[W]e hold that mortgage foreclosure is debt collection under the [FDCPA]. Lawyers who meet the general definition of a 'debt collector' must comply with the FDCPA[,] . . . [a]nd a lawyer can satisfy this definition if his principal business purpose is mortgage foreclosure or if he 'regularly' performs this function.").

the debt under a false pretense, namely that they were the lawful substitute trustees of Nationstar.

### B.   Quasi-Contract

Count II of the Dunns' counterclaim is a "quasi-contract" claim against Nationstar.  In its motion to dismiss, Nationstar construes this as a claim for unjust enrichment, (ECF No. 30 ¶ 26), and the Dunns respond in kind.  (ECF No. 36, at 9-10).

"Unjust enrichment consists of three elements: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value."  *Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 295 (2007) (citations omitted).

The Dunns contend that Nationstar accepted payments from them, knowing that it had not acquired an interest in the Note and therefore that it was not entitled to keep the payments and has been unjustly enriched.  (ECF No. 18 ¶ 61-62).  They challenge the assignment of the debt and correspondingly, Nationstar's authority to collect payments.  (ECF No. 36 ¶ 25).  The Dunns state that they are seeking restitution for any payments made to Nationstar that were not paid to First Home or another beneficiary of the Note.  (ECF No. 18 ¶ 64).

In response, Nationstar argues that it services the mortgage loan and is the holder of the loan, and therefore has authority to collect payments. This contention, however, illustrates the crux of the dispute between the parties, which is largely evidentiary and not ripe for determination on a motion to dismiss. Furthermore, Nationstar relies on evidence outside the four corners of the Dunns' counterclaim to support its arguments. As a general rule, extrinsic evidence cannot be considered at the Rule 12(b)(6) stage. There is an exception to this rule where the plaintiff has notice of the evidence, does not dispute its authenticity, and relies on it in framing the complaint. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2002). The Dunns dispute the authenticity of the appointments and affidavits regarding the Note, DOT, and who has holder status, and rely on them only to the extent of alleging that they are invalid.

## C.   Declaratory Judgment

The Dunns seek a declaratory judgment against all Counter-Defendants that "none of the named Counter-Defendants have any right or interest in [their] Note, Deed of Trust, or the Property which authorizes them, in fact or as a matter of law, to collect mortgage payments or enforce the terms of the Note or DOT in any manner whatsoever." (ECF No. 18 ¶ 56).

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . *may* declare the rights and other relations of any interested party seeking such declaration, whether or not further relief is sought."  28 U.S.C. § 2201(a). (emphasis added).  The United States Court of Appeals for the Fourth Circuit has further explained that a federal court may properly exercise jurisdiction in such cases where three criteria are met:  "(1) the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment; (2) the court possesses an independent basis for the jurisdiction over the parties (*e.g.*, federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction." *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592 (4th Cir. 2004) (*citing* 28 U.S.C. § 2201; *Cont'l Cas. Co. v. Fuscardo*, 35 F.3d 963, 965 (4th Cir. 1994)).

## 1.  First Home

First Home argues that the Dunns have failed to state a claim under the Declaratory Judgment Act because they have alleged no facts showing a controversy between the Dunns and First Home.  First Home argues that the Dunns have made no allegation that it has an adverse interest in the Subject

Property or that it has any legal relationship that would create a justiciable controversy.  First Home maintains that the Dunns' counterclaim concedes this fact as it states that First Home sold the Note (and thus all of its rights) to Lehman Brothers Bank, who then sold it to Lehman Brothers Holdings.  (ECF No. 18 ¶ 17).  The Dunns attached, as an exhibit to their counterclaim, the Note which evidences First Home's sale of its rights to Lehman Brothers.  (ECF No. 18-1).

First Home also asserts that the Dunns are essentially asking the court to declare the rights of the parties to the underlying foreclosure action – an action in which it is not involved.  Consequently, it alleges that there is no controversy or adverse interests between it and the Dunns; and thus, the Dunns have not shown they are entitled to a declaratory judgment.  The Dunns counter that unless a judicial declaration is made that First Home does not have an interest in the Property, First Home can attempt to sue them in the future because the Note bears First Home as the lender.

A declaratory judgment is authorized only in a case with an actual controversy between the parties.  The Dunns' allegations do not demonstrate a controversy with First Home.  Their fear that absent a declaratory judgment First Home could sue them in the future does not have the sufficient immediacy and concreteness necessary to invoke the Declaratory Judgment Act.

*See Medimmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007) (noting that "the facts alleged, under all the circumstances, [must show] that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment"). The Dunns' counterclaim for a declaratory judgment against First Home will be dismissed.

   **2.   MERS**

MERS contends that the counterclaim against it must be dismissed because its interest in the chain of title was never more than as nominee for a mortgage.  Furthermore, no remedy sought by the Dunns would affect MERS, and MERS is not a necessary party.  (ECF No. 30, at 10).  In response, the Dunns argue that MERS is a necessary party because MERS, having no interest in the property, executed an assignment of the DOT to Nationstar, which they contend is void.

Just as the Dunns have not shown a true controversy with First Home, they similarly have not shown a true controversy with MERS.  The Dunns' allegation regarding the void transfer implicates whether Nationstar had a legal right to collect on the mortgage and foreclose, but does not suggest that MERS has any rights to the Dunns' property, the Note, or the DOT. Furthermore, MERS is not a party to the foreclosure action and

is not claiming any right in the Dunns' Property, the Note, or the DOT.

Courts have consistently recognized in factually similar cases that MERS does not have a beneficial interest in mortgage debts or the borrower's property. Instead, it merely acts "in a very limited way" as a "nominee" for lenders and their "successors and assigns" in order to transfer bare legal title on behalf of beneficial owners. *Kiah v. Aurora Loan Services, LLC,* CIV.A. 10-40161-FDS, 2011 WL 841282, at *8 (D. Mass. Mar. 4, 2011); *Bank of New York v. Raftogianis,* 418 N.J. Super. 323, 347 (Ch. Div. 2010) ("MERS, as nominee, does not have any real interest in the underlying debt, or the mortgage which secured that debt.  It acts simply as an agent or "straw man" for the lender."); *cf. Landmark Nat. Bank v. Kesler,* 289 Kan. at 545 (noting that MERS did not have the right to intervene in the suit because it "did not demonstrate . . . that it possessed any tangible interest in the mortgage beyond a nominal designation as the mortgagor [-] [i]t lent no money and received no payments from the borrower"); *cf. In re Mortgage Elec. Registration Sys. (MERS) Litig.,* MDL 09-2119-JAT, 2011 WL 4550189, at *4 (D.Ariz. Oct. 3, 2011) ("MERS holds legal title to the secured interests and is the beneficiary or lienholder of record, as the nominee or agent for Plaintiffs' lenders and the lenders' successors and assigns.  That is, MERS serves as . . . the nominee or agent for

any valid note holder."). Courts have classified MERS's relation to lenders as that of agent acting on behalf of a principal, rather than finding MERS to have any ownership interest in the mortgages it transfers. *See Landmark Nat. Bank*, 289 Kan. at 539 (citing several cases finding "the relationship of MERS and the lender as an agency relationship").

Accordingly, MERS, as nominee for whichever lender holds the Note, does not have any interest in the underlying debt or the foreclosure; it merely acted as a straw man in transferring the Note and DOT. The validity or invalidity of MERS's assignment of the Note does not change the fact that MERS at no point held an interest in the Dunns' property. The Dunns have not shown that there is a controversy between them and MERS that would be impacted by a declaratory judgment from the court. Thus, the sole claim against MERS for a declaratory judgment will be dismissed.[8]

### 3.   Substitute Trustees & Nationstar

The Substitute Trustees and Nationstar argue that the Dunns have failed to state a claim that would entitle them to the

---

[8] After filing its initial motion to dismiss with Nationstar (ECF No. 30), MERS moved to amend its initial motion to add more support. (ECF No. 45). The Dunns subsequently moved to strike this motion. (ECF No. 47). Because the arguments in MERS's original motion to dismiss the Dunns' third-party claim (ECF No. 30, at 10-11), provided sufficient information for the court to resolve it, both motions will be denied as moot.

relief requested, a declaratory judgment that aims to stop the foreclosure and quiet title in their favor.

The Substitute Trustees argue that the Dunns' allegations that they do not have any right to foreclose on the subject property because of an imperfect assignment are unsupported by facts or law. Substitute Trustees maintain that all assignments were proper and all procedures necessary to foreclose have been satisfied. (ECF No. 26, at 7-8). They also contend that "it is undisputed that Nationstar is the holder of the Note and entitled to enforce the Deed of Trust in this foreclosure proceeding." (ECF No. 26 ¶ 20). The Dunns disagree, stating that "[they] specifically dispute the fact that any party to the foreclosure is the holder or owner of the note." (ECF No. 32, at 5).

Nationstar adopts all of Substitute Trustees' arguments and similarly maintains that the merits of the Dunns' arguments regarding the lender's right to foreclose are erroneous.[9] Problematically, the Substitute Trustees and Nationstar again

---

[9] Nationstar further states that "[o]ther borrowers in the foreclosure process have made similar if not identical arguments attempting to dismiss the foreclosure action without any success." (ECF No. 30, at 7). Nationstar and Substitute Trustees fail to realize that currently pending are their motions to dismiss the Dunns' counterclaim, not the Dunns' motion to dismiss the foreclosure action. Consequently, at this stage in the case, the Dunns must only show that they have stated a valid claim for relief under the Declaratory Judgment Act, not that they have a meritorious defense under Maryland's foreclosure laws for dismissal of the foreclosure.

rely on documents, the authenticity of which the Dunns dispute, outside the four corners of the Dunns' counterclaim to support their arguments.   Specifically, the Dunns dispute the authenticity of Substitute Trustees' and Nationstar's appointments and affidavits regarding the Note, DOT, and who has holder status, and rely on them only to the extent of alleging that they are invalid.   (ECF No. 18 ¶ 22-29, 53-54; ECF No. 32, at 3).   Thus, based on the four corners of the counterclaim, the Dunns have alleged a genuine controversy with Nationstar and Substitute Trustees regarding these parties' respective rights in the Note and the DOT.   Additionally, the Dunns' declaratory judgment action is ripe for review, because Substitute Trustees are attempting to foreclose.  *Cf. Horvath v. Bank of N.Y.*, 641 F.3d 617, 622 n.2 (4th Cir. 2011) (concluding that plaintiff's request for a declaratory judgment regarding lender's ability to foreclose on a mortgage contract is not ripe for adjudication when there has been "no attempt to foreclose").   In this case, the first and second requirements for the exercise of jurisdiction under the Declaratory Judgment Act are met.

The only question remaining is whether it would be a proper exercise of the court's discretion to issue a declaratory judgment.   "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and

wise judicial administration." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 296 (4th Cir. 2005) (*quoting Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995)). Accordingly, the court may, in the exercise of its "broad discretion," *S.C. Dep't of Health & Envtl. Control v. Commerce & Indus. Ins. Co.*, 372 F.3d 245, 260 (4th Cir. 2004), decline to exercise its jurisdiction and dismiss the action, *Volvo Constr. Equip.*, 386 F.3d at 594. A court must be cautious, however, as it should only decline to exercise jurisdiction where there is a good reason to do so. *Id.* For instance, a court should normally entertain a declaratory action where the "relief sought (i) will serve a useful purpose in clarifying and settling the legal relations in issue,' and (ii) 'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Cont'l Cas. Co. v. Fuscardo*, 35 F.3d 963, 965 (4th Cir. 1994) (*quoting Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375 (4th Cir. 1994)). "[C]onsiderations of federalism, efficiency, and comity" are also significant factors for courts to contemplate. *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998).

It is in the interest of efficiency to adjudicate in one action what is essentially the Dunns' defense to Substitute Trustees' and Nationstar's foreclosure action. There is a

genuine controversy between the Dunns, Nationstar, and Substitute Trustees regarding which entity has rights in the Note and DOT, which ultimately impacts the foreclosure action. Accordingly, the Dunns' claim for a declaratory judgment as to Nationstar and Substitute Trustees survives this motion to dismiss.

   D.   **Accounting**

   The Dunns also seek an accounting from First Home, Nationstar, and the Substitute Trustees.  From First Home, they would like an accounting as "evidence that a loan was given" because they maintain that they have "no record of receipt of a loan[.]"  (ECF No. 18 ¶ 80).  The Dunns also contend that because of Nationstar's fraudulent conduct, the Dunns made mortgage payments that were not owed to it.  (ECF No. 18 ¶ 81). As a result, they argue that these monies should either be credited back to them in full or credited back to the rightful owner of the Dunns' Note and DOT.  Finally, they allege that the amount of money owed from First Home and/or Nationstar to them is unknown and cannot be ascertained without an accounting of the receipts and disbursements of the aforementioned transactions. (*Id.* ¶¶ 79-82).

   "A suit for an accounting arises in equity and 'may be maintained when the remedies at law are inadequate.'"  *Gephardt v. Mortgage Consultants, Inc.,* CIV. JFM-10-1537, 2011 WL 531976,

at *4 (D.Md. Feb. 8, 2011) (*quoting P.V. Props. Inc. v. Rock Creek Vill. Assocs. Ltd. P'ship*, 77 Md.App. 77, 89 (1988)).  "In Maryland, a claim for an accounting is available when 'one party is under [an] obligation to pay money to another based on facts and records that are known and kept exclusively by the party to whom the obligation is owed, or where there is a [confidential or] fiduciary relationship between the parties." *Polek v. J.P. Morgan Chase Bank, N.A.*, 424 Md. 333, 365 (2012) (*quoting P.V. Props., Inc. v. Rock Creek Vill. Assocs. Ltd. P'Ship*, 77 Md.App. 77, 89 (1988)); *see also see also Goldstein v. F.D.I.C.*, CIV.A. ELH-11-1604, 2012 WL 1819284, at *13 (D.Md. May 16, 2012) (noting that "[a]lthough assertion of an independent cause of action for accounting is no longer necessary in most cases [due to modern discovery rules], it has not been entirely abolished in Maryland").  "Because the relief sought in an accounting claim is access to information, discovery is the remedy given to plaintiffs who prove they are entitled to an accounting." *Golub ex rel. Golub v. Cohen*, 138 Md.App. 508, 523 (2001).

First Home argues that the Dunns have failed to state a valid claim for an accounting from First Home, because it no longer has a relationship with the Dunns considering that it transferred their Note and DOT.  (ECF No. 38, at 8). Furthermore, First Home states that the Dunns have failed to allege that First Home "maintains any records exclusively."

(*Id.*).  Substitute Trustees and Nationstar argue that the Dunns
are not entitled to an accounting from them because the
Substitute Trustees have already filed in the foreclosure action
all documents pertinent to the mortgage loan including the
"default date, principal balance, interest, escrow advances,
corporate advances and total pay off amount of the loan."  (ECF
No. 26 ¶ 25; ECF No. 30 ¶ 32).

The Dunns argue that up until the time it sold the Note,
First Home held itself out as being their "true creditor," (ECF
No. 32, at 8), and that Nationstar held itself out as being
their mortgage servicer and the Substitute Trustees held
themselves out as being authorized substitute trustees.  They
allege that on account of these purported relationships, these
Counter-Defendants have a fiduciary duty to provide the Dunns an
accounting.  (*Id.*).  They further contend that the origination
of the debt began with First Home, therefore, the accounting
should begin with First Home.  They maintain that the amount due
from First Home and Nationstar to them is unknown and cannot be
ascertained without an accounting of the receipts and
disbursements of the aforementioned transactions.  (ECF No. 36 ¶
29).

Maryland courts, however, have demonstrated a reluctance to
permit accounting claims where the records could have been kept
by the party seeking the accounting.  *See Polek*, 424 Md. at 366

("We have said that '[t]he butcher, the baker and the candle-stick maker do not occupy a fiduciary relation toward every customer who has too much faith in human nature or is too busy or too careless (whichever way he may properly be characterized) to count his change.'" (quoting *Johnson v. Bugle Coat, Apron & Linen Serv.*, 191 Md. 268, 276-77 (1948)); *see also Goldstein*, 2012 WL 1819284, at *15 ("accounting claims have been rejected where the plaintiff was fully capable of ascertaining, through its own efforts, the information it sought from the defendant by way of an accounting, where discovery was otherwise available, or where there was no basis for inferring that [defendant] was in any sort of confidential relationship with or bore any fiduciary duty toward [plaintiff]" (quoting *Alts. Unlimited, Inc. v. New Balt. City Bd. of School Comm'rs*, 155 Md.App. 415, 508, 510-11 (2004))). In *Polek*, the Maryland Court of Appeals held that it would "not require, as a matter of law, that assignees of secondary mortgage loans provide a record-keeping service for many years after the contractual obligation to pay money has been concluded, simply because borrowers failed to maintain their own records." 424 Md. at 366.

The Dunns have not alleged facts showing they are owed an accounting from First Home. First Home and the Dunns' relationship was contractual, not fiduciary; in addition, the Dunns are no longer obligated to make payments to First Home, as

this relationship expired long ago when First Home sold its interest in the Note and DOT.   Finally, the Dunns' assertion that they need an accounting to show that they actually received the loan is without merit.   These records are not within the exclusive control of First Home, as the Dunns can check their own bank accounts to verify whether or not they received a loan disbursement.   The Dunns' claim for an accounting from First Home will be dismissed.

Nor is an accounting warranted with regard to Nationstar and the Substitute Trustees.   The Dunns have not alleged facts to show that they are entitled to an accounting through a fiduciary relationship with these parties, nor that these Counter-Defendants are in exclusive control of the information sought by the Dunns.   Thus, the Dunns' counterclaim for an accounting against Nationstar and Substitute Trustees will be dismissed.[10]

## IV.   Conclusion

For the foregoing reasons, First Home's motion to dismiss will be granted; the Substitute Trustees' motion to dismiss will

---

[10] Moreover, "[a]n accounting is unnecessary where discovery is sufficient to determine the amounts at issue." *Doe v. Cin-Lan, Inc.*, 08-CV-12719, 2010 WL 726710, at *8 (E.D.Mich. Feb. 24, 2010); *accord Goldstein*, 2012 WL 1819284 at *14.   Because the Dunns have properly pled other counterclaims against Nationstar and the Substitute Trustees, they will be entitled to discovery; thus, their accounting claim – which if properly pled would have entitled them to discovery – is superfluous. *Id.*

be granted in part and denied in part; and Nationstar and MERS's motion to dismiss will be granted in part and denied in part.  A separate order will follow.

                                    /s/
                        _____
                        DEBORAH K. CHASANOW
                        United States District Judge